Would the attorneys who are going to argue this afternoon please approach the podium, identify yourselves and the party you represent, and inform us of how much time you'd like to argue, and if you have any questions, please feel free to ask them. Remember that the microphone is for recording purposes, not amplification, so you're going to have to speak up. Mr. Clerk, please go ahead. Would one of you be kind enough to close that door, please? Thank you. All right. Good afternoon, Your Honors. My name is Elizabeth Bartolucci, and I represent the plaintiff appellant, Roy Flores. How much time would you like? Sorry, ten minutes to argue, and then we'll move to the rebuttal. Very well. Good morning, Your Honors. Evelyn O'Rourke, Board of Finance, Patrick Duggan. I request 15 minutes for argument. Very well. Okay. Thank you. May it please the Court, Counsel, this is a case in which the plaintiff appellant, Roy Flores, is seeking a reversal of a circuit court order denying his petition to modify a final judgment dismissing his case pursuant to Section 2-1401 of the Civil Practice Act. As the Court, I'm sure, is well aware, Section 2-1401 authorizes the trial court to vacate or modify a final judgment or order in a civil or criminal proceeding. And the seminal element of the Supreme Court case that guides rulings under Section 2-1401 was Smith v. Ayer Rule. And the holding in that case was recently reiterated by the Supreme Court in Warren County with Soil and Water Conservation District v. Walters. Due to some confusion, it appeared in the appellate courts that was created by a decision in a criminal case, Peoples v. Vincent. So the Warren County case is our current, as I said, leading case on deciding Section 2-1401 petitions. But the elements and rules set forth in Smith v. Ayer Rule still govern, and I think that's the most relevant case to focus on today. Ayer Rule established that to be entitled to relief from a judgment under Section 2-1401. Well, this isn't a judgment, is it? Well, it's a final dismissal order with prejudice. So it's an order that became final when Mr. Flores' wife's case concluded. Well, I would dispute that only to the extent that it was final when it was entered but not appealable. Correct. So, otherwise, I agree with the Court, and I do believe Section 1401 applies equally to final orders and judgments. Okay. So the order here – So it became final and appealable at the conclusion of his wife's personal injury trial. Yes. Right? Yes, that's correct. And so then the – If you take the position that it wasn't voluntarily dismissed without prejudice. Correct. And it is right to voluntarily dismiss. Correct. If you take the position that it was a dismissal with prejudice, then that became – the trial court lost jurisdiction of it 30 days after the wife's claim was resolved. So there was no ability to file a motion under 2-1301, so the plaintiff proceeded under 2-1401. So just barely a month after the trial, the wife's claim was concluded. So rather quickly, upon counsel realizing that his opponent believed the dismissal was with prejudice, and then he gave it back to the order itself, indicating it was with prejudice. So if, in fact, if he had dismissed it voluntarily, he would have had a year from that time to reinstate the case. Correct. And when he attempted – when he filed his 1401 petition, he was within the one year of refiling the voluntary dismissal. That's correct. And to further preserve Mr. Flores' rights, Plaintiff's counsel did, in fact, file a second lawsuit in Mr. Flores' name so that any relief that may be returned here wouldn't be – the question wouldn't be moved, because that one year, if you were to correct the dismissal order by a ruling in this case, it could have been rendered moot if the year had passed. If, say, you enter an order correcting the dismissal in a non-court talk, arguably it could have become moot. So Plaintiff's counsel has filed a second lawsuit within the one year under 2-1009, and that has a motion to dismiss pending based on what happened here. So that's been stayed pending the outcome of this appeal. And is that pending in front of Judge Gillespie? I don't believe so, no. What would be the necessity of the non-court talk? Well, I think non-court talk seems appropriate here simply because, as we discussed, this dismissal was, A, not on our opponent's motion, and it was not on the judge's response to the decision or really on a written motion that this case should be dismissed as an adverse judgment because it's something the plaintiff failed to do. This was plaintiff's own motion, verbal motion, seeking to dismiss without prejudice his claim under 2-1009. And as you can tell, I mean, it was entered on a case management order. It's a rather casual order, and it was a verbal motion made in open court. And the intent, Judge Gillespie seemed to agree that the plaintiff's counsel's intent was to dismiss the case without prejudice. And so non-court talk correction of orders is deemed appropriate when you're not changing any judicial determination and you're correcting essentially a scrivener's error. Here, I don't know the reason, but defense counsel wrote the case management's order, and plaintiff's counsel, unfortunately, probably just gave it too quick of a review, and it was entered. And as you've all probably experienced from looking at some records, the order that came back is not very legible. And the case was continued for further progress on the wife's claim. So there was a CMC set for a month later, and a month later, and discovery ensued, and the case went to trial. So there really was no cause at that point for plaintiff's counsel to take a microscope and look at that dismissal order, believing that there's no reason for the case to be dismissed except for plaintiff's own motion. So non-court talk correction of the order is appropriate because it certainly wasn't Judge Golaski's decision based on any wrongdoing or disobedience of a court order that the case be dismissed. It was solely the plaintiff's choice for a strategic reason to dismiss the case, which he was well within his rights to do under 2-1009. So, yes, go ahead. Sorry. Well, I agree. Look, the handwriting on the order looked like they took a penmanship class in medical school. That isn't really the only issue, though. 2-1009 has three requirements. One, the timing of it can't be at trial. Now, and there's no dispute here that that's an issue in this case. But two is notice. It says anytime before trial or hearing begins, upon notice to each party who appeared. Now, there was no notice. Now, we're talking about notice in the technical term, I think, as 2.1 of the Cook County Rules notice of a hearing or notice of motions. It's got to be in writing and all of that. So there was no notice here, though. Well, that is sort of embedded in the disputed fact question. So clearly, defense counsel contends there was not only notice, but he confirmed in writing that at the next case management conference the case would be dismissed. Well, again, that's what I said. The notice used in the statute is talking about a notice of motion. 2.1 of the Cook County Rules said, except for actions on a trial call, written notice of the hearing of all motions shall be given to all the parties who have appeared. And it goes on to talk about it. But that's the notice they're referring to, and there was no notice in this case. If we're trying to access 2-109, that's the second requirement, is that there's notice. Well, again, I can't contest what's in the record. It obviously would have been far more preferable from my client's perspective that there was a written notice and motion under 2-1009. For good or for bad, sometimes that is the common practice. Judges do allow all motions without written notice to proceed. Sure. And so I think that, and certainly there's an argument that defense counsel could have raised the notice issue and required notice, but I would argue that he moved that also. Well, and frequently the defense is very happy that the plaintiff's taking the voluntary dismissal, and I understand that. But the third issue is payment of costs. 2-1009 says, after it says notice, upon payment of costs, the party can dismiss an action or any partners to any defendant. And I don't remember anywhere in the record any discussion of payment of costs, except for the order, which did say without cost to any party. But prior to that, I don't remember in the correspondence, in anything, discussion of payment of costs. Now, the statute calls for it to be done at the time of the dismissal, but I believe frequently it's done at the time of refiling. But I don't remember any discussion anywhere. The order doesn't talk about other than no cost. Right. That's exactly true, Your Honor, and that's why I did go through the elements of 2-1009 and address costs, because I also would, if I were reviewing this decision, I would go through it with a fine-tooth comb and see, well, what the requirements of 2-1009 meant are present here. And I would say that, you know, the order did discuss costs. It said without costs, which, again, is an indication to me that the defendant waived costs. I'm sure the court knows the practical purposes. As you noted, Justice Griffin, often defense attorneys ask for payment of costs upon the refiling of the next suit. That's actually the more common practice, from my understanding. And also, from a defense perspective, pursuing costs is often not a cost-effective thing to do, to have your accounting staff go through, you know, because costs are typically so limited to filing fees. And so here, I think it's reasonable to refer from the language in the order that, I mean, it says without costs. And defense counsel wrote that order. So I think it's reasonable to refer from that that they, because he was aware of the right to costs and waived the right to costs. Well, his costs were the same because it's two plaintiffs. The case still was pending. So his costs were his costs, whether it was two plaintiffs, five plaintiffs, or one plaintiff. That's true. So whatever costs he paid to defend the case, he would have paid anyway, so there were no costs denied to him, no costs due him by one plaintiff leaving the scene. I would agree with that. I knew you would. We're getting into this argument. Thank you. No, I think that's true. So let's move on to your next one. Okay. So the element here, the three elements that are required under Smith v. Arum are the existence of a meritorious claim of defense. Here, Judge Grassley didn't spend a lot of time on that, but appeared to find that there was a meritorious claim here. And I think that's borne out by the record by the fact that Mrs. Flores did, in fact, recover the jury trial. So the true factor that created the issues for us here is the second element under Smith v. Arum, which is due diligence in presenting your claim in the circuit court. And here, the case law is very clear that courts are authorized to exercise their discretion and to consider all the facts and circumstances surrounding a party's presentment of his or her claim. And here, I mean, the record seems devoid of any indication that Plaintiff didn't diligently present his claim but for this one error. And it seems that Judge Gillespie misconstrued sort of the scope of his discretion by focusing only on what happened that day at the case management conference and the entry of that order. He could have considered the fact that the plaintiff timely filed his complaint, was engaged in discovery, you know, hadn't done anything to that date. And it's a set kind, you know, to put his claim in question or to not effectively prosecute it. What, in your opinion, was Judge Gillespie's focus on no diligence? What was he thinking about? Well, I think that he didn't acknowledge the case law that says an excusable mistake can substitute or satisfy the due diligence requirement under Smith v. Arum. Is he saying that you should have brought this issue to the court's attention sooner than nine months after it happened? No. In fact, Judge Gillespie did not reach the third due diligence element, which was due diligence in bringing the 1401 petition. He did not address that element because he got stuck on the second one. And that's what I'm confused about. What's the second element he got stuck in? The second element is whether the plaintiff exercised due diligence in presenting his claim, i.e., his tort injury claim, to the court. And, I mean, to me, that should encompass filing a complaint on time, answering discovery. I mean, we've seen, I'm sure, many cases where 1401 petitions are denied because of discovery violations, and failure to comply with discovery, failure to respond to motions for default judgment. I mean, when I looked at the facts here, I just sort of, you know, couldn't find one thing that this plaintiff's counsel had done wrong but for not read that dismissal order carefully enough. So the diligence element, the second diligence element, well, it's the first diligence element, it's the second Smith element, is that the plaintiff's exercised due diligence in presenting his claim in the circuit court. And from my reading of the case law, that includes everything from filing it on time to participating in discovery. And, unfortunately, it appears Judge Gillespie just got stuck on, you know, he said, I believe counsel believed that he was successfully voluntarily dismissing his claim. Counsel being the plaintiff. Yes, sorry, plaintiff's counsel, that he was, he believed, the judge believes, the evidence showed he intended to voluntarily dismiss his claim without prejudice, but that finding is belied by the order itself. And, to me, that was sort of confusing logic, almost circular. That was the whole purpose of the 1401 petition, which is to say, this order does not reflect what my intent was, and here is evidence of what our intent was. So I think the other issue with the judge's ruling was just that, A, he didn't acknowledge that a reasonable or excusable mistake can satisfy this due diligence element, and, two, he sort of stated this very common proposition that I'm sure you've all heard before, that 1401 isn't intended to relieve a party of his own mistake or his counsel's negligence, and he cited the LaRavida case. However, factually, that case is not really on point, and it seems that the court just said there was a mistake by counsel, and so 1401 doesn't entitle plaintiffs to relief. And that's not really what the case law says. I mean, the vast body of case law shows plaintiffs who prevail, or petitioners who prevail on 1401 petitions often raise the negligence and neglect of their counsel. I mean, it's just not an accurate statement to say that 1401 can't be used to afford a party relief when their counsel has neglected their case, because the majority of cases do involve attorney neglect. So the issue, and I think the court in Boyle v. Veterans' hollowing line, which we cite in our brief, said that the rest, of all these factors and all these elements, the court said the only, I'm sorry, I said it the wrong case. It's Fitchin v. Baumfreid. The court said specifically that the basic question is whether the plaintiff was guilty of an excusable or inexcusable mistake. So the courts recognize that an excusable mistake can satisfy the dose requirement here, and I think that's where Judge Gillespie's decision was in error. I just don't think he acknowledged that a mistake can satisfy the due diligence requirement, and he didn't then evaluate whether the mistake here was excusable. And I think, you know, compared to so many cases where there's completely neglected cases for years on end, I mean, this is a very reasonable excusable mistake, one event in the otherwise good prosecution of a claim. So I'll, I think my time, 10 minutes, maybe. I'll give you a couple more if you've got something important. Okay. I'll just address the non-court trunk issue again. I would just suggest that, you know, that is an option for the court here. The court does have inherent authority to enter any order that should have been entered under the Supreme Court rules, and I think that, you know, here, this is a scrivener's error that the plaintiff sought to correct, and his original petition under 1401 essentially said that. Can we just add the word out to without prejudice? The scrivener is taking a position that it wasn't an error. Right. But I think the thing to consider there is, I mean, defense counsel had no basis for obtaining. Yeah, but he's the scrivener. True. He's claiming no error. But his intent is not the party's intent that was supposed to be reflected by this specific ruling. Defendant had not moved to dismiss the case. Well, I understand all that, but the scrivener is saying, I made no mistake. I wrote exactly what I intended to write, and the court entered the order as written. So I don't – I think scrivener's errors are a bit of a stretch. Well, I acknowledge that they do dispute what they believe the intent was of the plaintiff's counsel. So to that extent, it does get back to, you know, these disputed issues of fact and whether an evidentiary hearing would have been appropriate. I think that, you know, under the Warren County case, an evidentiary hearing would be appropriate. The only issue I see, however, is that the attorneys at issue have already signed affidavits saying what they believed and didn't believe. And also Judge Gillespie potentially would be a witness. And I just don't know how much more we would get out of an evidentiary hearing other than whether it's reflected in the party's affidavits. Well, Mr. Flores didn't sign an affidavit, did he? No, he didn't. So is he still alive? Yes. He'd be available to testify. Isn't there an affirmative in one of the affidavits that I sent my client a letter saying, we dismissed the case and we can refile it within a year? Yes, he could, although I don't even think that the, you know, authenticity of that letter has been disputed. Well, I don't want to get – go ahead. Well, what about the issue over that other letter, whether it was sent or not? That's a factual question that could be fleshed out in a hearing. There's discussion about the correspondence was by e-mail, but that this had no e-mail evidence, for lack of a better term, that was implied. So couldn't that be a fact? Because isn't the excusable versus inexcusable kind of fact-based? I mean, it can be, but I think here – I feel that there was, you know, sufficient – a preponderance of the evidence showed that the plaintiff's counsel's intent was to dismiss without prejudice. I just – there were no facts surrounding the case or the prosecution of the case or its procedural posture that would indicate it would be dismissed with prejudice. There was no reason I can see why the plaintiff would dismiss his claim with prejudice at this juncture. There just wasn't a reason. So I think their intent is not really truly in question, and it was really whether the attorney communicated the proper dismissal to the judge and whether the defense attorney correctly wrote what the police attorney said he was seeking from the judge. Excuse me. So what exactly are you asking us to do? Are you saying you want a reversal and a direction to affirm the 1401? Glanta? I think the ideal situation would be to reverse the circuit court's order and find that Judge Gillespie abused his discretion in denying the 1401 petition because he, in essence, didn't exercise his discretion. There's case law that says when a judge fails to exercise the discretion given to him, that in itself is an abuse of discretion, or when he misapplies the wrong law or the wrong analysis of the law, that in itself is an abuse of discretion. So even though we've argued that a de novo standard of review could apply here because we think he applied the incorrect legal analysis, that in some cases is deemed itself to be an abuse of discretion. So I do feel that based on the case law here, you could appropriately hold that Judge Gillespie abused his discretion in denying the 2-H 1401 petition and reverse on that basis. Alternatively, if you do feel that the disputed fact issues warrant an evidentiary hearing, then we would ask for a reversal with direction to hold such an evidentiary hearing and reconsider the 1401 petition. Thank you. Okay. Thank you. Thank you. Ms. O'Rourke? May it please the Court, Counsel? The first thing I want to address is this non-pro-tunk issue because this is addressed in the briefs. There has always been defendant's contention in this matter that the judgment order is not the result of a clerical error. As you said earlier. It's not a judgment order. I'm sorry? It's not a judgment order. The order. The order. The final fealable order. The final order was not the result of a clerical error. So non-pro-tunk order is not appropriate. And, in fact, non-pro-tunk order is not appropriate based on the law because there's nothing in the record itself which would correct that. It can't be based on affidavit or other information. It has to come from the court record itself to be appropriate under non-pro-tunk. It is always a defendant's contention. There is a deliberate judgment to dismiss a claimant's prejudice. It's not a judgment. The order. I apologize. The order. There was always a deliberate order to dismiss the claim. It is not unusual that would be the case in this matter. And whose motion was that made? Plaintiff's motion in court. And you have the record of what was said? We don't. We don't. We have affidavits that say both scenarios. I don't have an affidavit from any plaintiff's lawyer saying it was my intention to dismiss the case with prejudice. No, we don't, but we have a defense attorney's affidavit that says it was. Correct, correct. But we have the order that says that. We have the order that says it's prejudice. And it's an order that is not pages long. It's not full of subparagraphs. It's not full of bullet points. It is a one-page order, one sentence. It's not allowed to read in court. And plaintiff's attorney said in his affidavit he read it. Now, it's not appropriate in this case because there is a question about that. What we also have is that Justin Gillespie saw the order in court, read it, and he signed it in court. He signed this final order. So you have to assume he saw that. He was there. He was in the best position to know what went on, and he signed it. It's incorrect when counsel just said that Judge Gillespie said in his order denying the 1401 petition that he believed it was not intentional to dismiss with prejudice. That's not what he said. He actually said in the order it is entirely possible that plaintiff's counsel believed that he had successfully voluntarily dismissed Roy Flores without prejudice, despite the evidence provided by the defendant. He meant to say that's what happened. He said it's possible. That's all. Excuse me. Yes. Was that order denying the 1401, was there an evidentiary hearing of any kind preceding that? There was not because it was not requested by plaintiff. Neither party actually requested an evidentiary hearing. If it's not requested, it's waived. And the law states it says. In fact, Smith v. Arum says it is waived if it fails to be requested. So to ask the court to do that now is too late. It wasn't requested, and so it is waived. There wasn't even an argument on it. No, there was no argument. It was never requested. There was no argument. There's no court transcript. The court entered the order without hearing any argument. I don't know that's true or not. Okay. I don't know because it's not in the record. If counsel appeared, I know that day. Whether there was an argument, I don't know. There could have been, I just don't know to say yes or no. But, again, counsel read the order to plaintiff. Judge Gillespie saw the order, read it, and signed it. Well, you don't know if he read it and signed it. Well, I'm assuming he did because he's a Supreme Court judge. And when I go to court, they read the order and they sign it. They're supposed to, and every time I go, actually, they do do that. They read it. You bring the order up, the court gives it to them, and they sign it. But there are strategic reasons why they would dismiss it with prejudice. It's not unusual. Roy Flores had six prior car accidents before this accident. Is this part of the record? It is. It's in his interrogatories, which part of the record. Six prior accidents and one subsequent accident after the accident. Listed in his interrogatories. His case was not the best. His wife's was better. And so strategically, they thought, we'll take the wife to court for the trial. Did not go as well as they wanted it to go. So there was a strategic reason for dismissing this suit, even with prejudice, because Roy Flores' case was problematic. Did his wife prevail? Did she receive a verdict in her favor? Not as much as they asked for. What? Not close to what they asked for, actually. It's a reason. It's a reason to dismiss it with prejudice for strategy purposes. Regardless, the court order stated that. How would the strategy matter whether it was with prejudice or without prejudice? I understand why you didn't want to try it together. I get that. Correct. But what would be the advantage of doing it with prejudice? I can't tell you that exactly, why they did that. All I can tell you is that the court order stated that, and plaintiff counsel was in court. But you're just arguing that those strategic reasons are different with prejudice. Because plaintiff counsel just stated that there was no reason to dismiss with prejudice. I think that's not true. There is some reason. There is some reason to dismiss. What is the reason, according to your kind of thought? Because the case of Roy Flores was not a very good case. They didn't want to try that case. That may be a reason. And again, responding to their argument, there is no reason. There is a reason. Okay. Next point, please. Non-protemporathon is not appropriate. So even if you assume the order is incorrect, the mistake is not an excusable mistake. And Judge Gillespie did use his discretion to deny the 1401 petition. What was Judge Gillespie focusing on when he apparently felt that there was no diligence in bringing the claim on behalf of the plaintiff? He was focusing on the order, the final order, that dismissed the case with prejudice. And this order had been entered nearly eight months before. Right. And a trial had taken place during that time. Right. At which point, defense counsel in defending that trial, the defendant, had an order stating the case was dismissed with prejudice. So your position is Judge Gillespie said that eight months was not diligent? Waiting eight months was not diligent to bring this motion to vacate it? I believe Judge Gillespie believed not reading the order when it was entered in court was not diligent. I believe when you had the court order in hand or could find it, you can't read it, locate it. But it was read in court. Not bringing the motion, the 1401 petition, for eight months. Even though you get two years to do it? Yes, because a trial had taken place at that time. But you still get two years to bring a 1401 motion, right? Theoretically, yes. Theoretically. Well, you can, but it's not always approved. It's not always granted. You are allowed, you're given the right to bring it within two years. This plaintiff brought it within eight months. You're given the right, Your Honor, but it's not showing due diligence based on the facts of this matter. And Judge Gillespie ruled that. And it was not in the best of his discretion to rule as such. Okay. Judge Griffin, you had a... Well, I thought Judge Gillespie correctly delineated the three elements of a 1401. Existence of meritorious defense, due diligence in presenting the defense or claim, and due diligence in filing the 21401. I thought he, his order was limited to the second one. Due diligence in presenting the claim was his basis. I'm trying to read it real quickly. That's what he focused on? Yes. So, they're arguing that diligence is different than a mistake. Diligence, and I looked it up in the dictionary, constant and earnest effort is diligence. So failure to have that kind of constant and earnest effort. Whereas a mistake is an error in action caused by carelessness. So, clearly, I mean, I get that looking at an order and not reading it correctly would be a mistake. An error in action caused by carelessness. But I don't see how that's a constant and earnest effort. Diligence is more, just, I'm going from the dictionary. How it could be diligence? Yeah, I'm just reading an order being a lack of due diligence. I just want to, I'd like you to address the distinction between a mistake, which is what they're saying. They're saying the issue is whether it's either an excusable or inexcusable mistake. And the 1401 standard of lack of due diligence or due diligence. I think they can be one and a part of each other. If you have a mistake such as this, that is not excusable because the attorney reads the order and doesn't bring it up for eight months and the trial takes place. That is an error that shows lack of diligence. But he didn't realize it when he read it. But with all due respect, that's not defendant's fault that that happened. No, no, nobody's saying it is the defendant's fault. But you're saying that that's a lack of diligence. If I look at something and I misread it, and then eight months later it's brought to my attention that what I thought I read wasn't what I read, and I come into court 31 days later, some would say that's diligent enough to bring the error or problem to the attention of the court. But respectfully, many times in the law, whether it's 1401 or other situations, the time goes by and you don't have the option anymore. It's an error. It's a mistake. Yes, it's a mistake. But if you're one day late for the statute of limitations, you're late. If you're one day late to file a notice of appeal, it's different, but it's a mistake. You don't always get that opportunity to correct because you didn't read something correctly. But 1401 gives you two years to try to correct a mistake. To try. You can file 1401 within two years, but there's no guarantee. You have to still meet these elements. In this case, they didn't meet the element of due diligence in presenting a defense or claims in circuit court. But the attorney read the order. He read it wrong. Arguably, we believe he did not. Even if so, he did. He was there in court. This is not a situation where he wasn't there in court. He left early. But if he realized he read it wrong in court, you would think, right, he'd turn around and get it corrected or try to get it corrected. Apparently here, there's no contest. No contest. That it wasn't, the issue wasn't developed or brought up until eight months after the order was entered, shortly after the jury trial for his wife, and right after he called the insurance company and said, we're going to refile our claim. And then 31 days later, he filed this 1401 motion. And I don't think, perspectively, that's excusable. And Judge Gillespie agreed with that. Judge Gillespie agreed. Does your firm do it with malpractice defense? Your Honor, everyone. We do not. Okay. We do not. But not every mistake is an excusable mistake. And there's plenty of cases where it says it's such. The Supreme Court said it's such in Warren County's law on water conservation. It primarily relied on Section 214. And one is not entitled to relief, quote, unless he shows that through no fault or negligence of his own, the error of fact, the existence of a valid defense was not made apparent to the trial court. And the court says there have to be extraordinary reasons to change that. And there's not here. Wasn't that a fact question? Is it a fact question? It is a fact question. And Judge Gillespie heard the facts. There was no evidentiary hearing requested. So that is waived. And Judge Gillespie was in the best position to make the decision. There is no evidence he abused his discretion in this case. This was a decision for Judge Gillespie to make. And he did so. Again, the court has said, Clifford v. Irma said discretion has come to the court because the court is in the best position to determine the facts and circumstances and equities in the matter. So where does this court may disagree? What are the inequities to your client? My client went to trial with a dismissal, with an order, a final order that said dismissed with prejudice. And Roy Forrest testified in the case. But there is no need for defense counsel to cross-examine him as he would if he was going to do a trial on the case. No cross-examination regarding bias. Nothing. So equity works both ways. Bias. Yes, yes, bias. He may identify himself as the plaintiff's wife or husband. But he did not have his own case, the chance of his own case, because the order said dismiss with prejudice at the time. If the order had said dismiss without prejudice, you wouldn't, how would it change your strategy at trial? Bias. He would have his potential on suit. In terms of cross-examining him, it would be very different. So, yes, there is prejudice there. It works both ways. Again, eight months went by. This order was out there. They had a copy. They were in court when it was entered. Well, but the eight months, I mean, that, according to your brief, is not what the trial court determined. You know, your brief on page 8 talks about four elements for a 1401. The second element, due diligence in presenting the defense to the trial court in the original action. Your brief says the court's appropriate case determined that the second element here was not met. Correct. This is not, that's, the eight months has nothing to do with the court's ruling according to you. I'm reading your brief. Now, the third element is, or I'm sorry, the fourth element according to you is due diligence in filing the petition for relief. That's the eight months. The second one is due diligence in the case. That's what you said here. Well, no, the eight months goes to due diligence in pursuing that original action. It does. Absolutely it does. Absolutely it does. No, but I don't think that's what, I think that's misconstruing what I said, Your Honor. And I also argue in my brief that the third element, that goes to that as well. In terms of presenting the defense or claim to the circuit court, my primary argument in that regard is that plaintiff counsel was present in court when that was entered and saw the order. Saw the order. It's a mistake, but it's not an excusable mistake in this matter. And it was eight months until the petition was overfiled in this case. Judge Gillespie respectfully was the trial court in this case, the circuit court. And he has the discretion to make that decision. And there's no evidence here that he abused that discretion. He relied on La Robita case, La Robita Children's Hospital v. Harrison. That case is good law. It states the elements. He focused on the order because that was being focused on by the parties in this case. But he saw those elements. And there's no evidence that he abused his discretion. And that's the standard. Plaintiff argued it was de novo. It's not de novo because it's a factual question. And plaintiff never requested an evidentiary hearing in this case, so it was waived. Okay. You've touched on that. Is there anything else you want to touch on? Your time has elapsed. No, Your Honor. That's it. Go ahead. I think I've touched on most of it. In terms of equity, I will say, again, it does work both ways. Defense counsel went to trial having a dismissal order with prejudice. I think the most important thing here is its discretion. And it's not a failure of Judge Gillespie not to use his discretion. He did use his discretion. It did not go beyond the bounds of reason. But that's the standard, use of discretion. Judge Gillespie did not abuse his discretion and did not have a 1401. He applied the proper elements. He has to be at the order stand. Thank you. Thank you. Short rebuttal. Thank you, Your Honors. Just to respond to some of the questions discussed, first of all, the timing of this dismissal occurred in August, several months before Mrs. Morris's case went to trial. So counsel justifying a dismissal with prejudice as being reasonable at that point because her case didn't go well just doesn't make sense from a timeline perspective. Her case was still in the discovery phase. So there is no reason why Mr. Flores would have dismissed his case with prejudice, as you noted. Also, there was no hearing allowed on the 1401 petition. There was not robust evidence of this in the record, but there is the order where the judge simply stated that the parties had filed their briefs and that the 1401 petition was denied and that he would be issuing a memorandum of opinion. So there was no hearing or argument on the 1401 petition. Counsel, how do you respond to counsel's claim that the evidentiary hearing was waived? Well, I looked into that, and I did order transcripts from hearings that led up to the initial denial of the 1401 petition. And at an evidentiary hearing, the prospect of one was mentioned by defense counsel, but it sounded as if the parties were sort of tabling it. I don't know if they expected Judge Goreski to perhaps say, okay, I think there are disputed fact questions we need in an evidentiary hearing, or if they were going to rely on him reviewing the affidavits. But I can't dispute that we did not formally request an evidentiary hearing. The prospect was brought up in reference to one hearing, but none was held and it wasn't a formal request for one. So I think the lawyers may have relied on Judge Goreski to say whether or not he felt one was required. And so I do want to just clarify for the Court that Judge Goreski did not reach the second due diligence element. He did not evaluate the time that passed from the date of the dismissal order until the 1401 petition. He specifically said the petition does not meet the second element required to be entitled to relief. And then later he says plaintiff's counsel's mistake, inadvertent or otherwise, does not entitle to relief under 1401. So our view is that that sort of discounts or disregards the case law that says excusable or inadvertent mistake and that he actually can satisfy the due diligence requirement under Smith v. Arrowman and that's what he urged. Very well. Thank you. Thank you. The Court appreciates the effort of both counsel in this regard. We'll take the matter under advisement and thank you for your participation. Thanks.